# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 16 2015

MATTHEW J. DYKMAN
CLERK

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched or identify the person by name and address)* ) <br> 1 Apple Macbook,1 HP Pavillion Laptop,1 Toshiba ) <br> Hard Drive,1 Samsung Tablet,1 Kodak Digital ) <br> Camera,as more fully described in Attachment A. ) | Case No. 15 MR 435 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of ___New Mexico___ *(identify the person or describe property to be searched and give its location)*: 1 Apple Macbook serial number 4511718DF5X, 1 HP Pavillion Laptop computer serial number 5CD3347KHB, 1 Toshiba Hard Drive serial number 13Q7SI3ASSX3, 1 Samsung Tablet, 1 Kodak Digital Camera serial number KCGMJ02726649 seized from the residential property and premises located at 10156 Menaul Blvd. NE, Apt. R6, ABQ, NM

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: Evidence of, or contraband, fruits of, or other items related to the offense of 18 U.S.C. 1591, Benefited financially while using force, fraud or coercion to cause a person to engage in a commercial sex act, as described in Attachment B incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1591___, and the application is based on these facts: See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Morgan Langer*
Applicant's signature

Morgan Langer, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/16/15

*Judge's signature*

City and state: Albuquerque, NM

William P. Lynch, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF
one Apple Macbook serial number 4511718DF5X, one HP Pavillion Laptop computer serial number 5CD3347KHB, one Toshiba Hard Drive serial number 13Q7SI3ASSX3, one Samsung Tablet number CE0168 and one Kodak Digital Camera serial number KCGMJ02726649 seized from the residential property and premises located at 10156 Menaul Blvd. NE, Apartment R6, Albuquerque, NM 87112
Described in Attachment A
Incorporated herein by reference

**AFFIDAVIT OF SPECIAL AGENT MORGAN LANGER**

I, Morgan Langer, being duly sworn, hereby declare and state as follows:

Your Affiant is a Special Agent with the Department of Homeland Security, Homeland Security Investigations, hereafter referred to as HSI, and has been employed by HSI (and all its previous incarnations) as such since June 1997. Your Affiant is currently assigned to the HSI office in Albuquerque, NM where your Affiant is assigned to investigate individuals involved in the trafficking of people including violations of Title 18, United States Code, Section 1591 and 1592. Your Affiant has worked many human trafficking investigations and has been trained in the investigation of human trafficking cases by the Department of Homeland Security and other governmental and non-governmental entities. During the investigation of these cases, your Affiant has participated in the execution of search warrants and seized evidence of these violations.

Your Affiant successfully completed approximately twenty weeks of Immigration Officer Basic Training at the Federal Law Enforcement Training Center (FLETC). Your Affiant holds a Bachelor's Degree in Urban Studies from Rutgers University, and a Master's of Arts Degree in Criminal Justice from Rutgers University.

This affidavit is made in support of an application for a warrant to search one Apple Macbook serial number 4511718DF5X, one HP Pavillion Laptop computer serial number 5CD3347KHB, one Toshiba Hard Drive serial number 13Q7SI3ASSX3, one Samsung Tablet number CE0168 and one Kodak Digital Camera serial number KCGMJ02726649 seized from the residential property and premises located at 10156 Menaul Blvd. NE, Apartment R6, Albuquerque, NM 87112 as described in Attachment A, incorporated herein by reference, and to examine items, as more particularly described in Attachment B, incorporated herein by reference.

This affidavit is based upon information your Affiant has gained through investigation, training and experience, as well as information from other law enforcement officers whom your Affiant believes to be reliable. Since this affidavit is being submitted for the limited purpose of securing a search warrant, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to

establish probable cause to believe instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Section 1591 are located on the following electronic devices: one Apple Macbook serial number 4511718DF5X, one HP Pavillion Laptop computer serial number 5CD3347KHB, one Toshiba Hard Drive serial number 13Q7SI3ASSX3, one Samsung Tablet number CE0168 and one Kodak Digital Camera serial number KCGMJ02726649 seized from the residential property and premises located at 10156 Menaul Blvd. NE, Apartment R6, Albuquerque, NM 87112, as more particularly described in Attachment A, incorporated herein by reference, and to examine items, as more particularly described in Attachment B, incorporated herein by reference.

**CURRENT INVESTIGATION**

Your Affiant has been conducting a joint investigation of Shane ROACH with Detective Matt Vollmer of the Albuquerque Police Department Vice Unit. The details of Detective Vollmer's investigation are as follows:

Your Affiant note: all references in the following text which are stated in the first person are to be attributed to detective Vollmer:

"May 27, 2015

I made contact with a female who was later identified as Dallas Grassbaugh in reference to an advertisement on www.backpage.com. In which I contacted the number listed on the ad (505)730-3069. She agreed to meet me at her hotel room. Upon arriving she exited the hotel room after a short time, and when she returned she informed the "cops" were outside. I stayed in an undercover role and left the room a short time later, in an attempt to pursue the encounter at a later time.

June 10, 2015

Detectives were contacted by Dallas in reference to her requesting "help". While on the phone with Dallas, she directed detectives to The Guesthouse located at 10331 Hotel Ave NE, Albuquerque and stated that she was being trafficked for sex. Detective Fox and myself arrived in the area, and Dallas began to become scared, stating, "He may be outside watching, I don't need help". Based on Dallas' behavior we believed her to be in danger, at which time we entered the hotel and found that she had been registered to room 224. I knocked on the door, and Dallas answered. Dallas was visibly upset, and seemed very frightened. Through my training and experience I know that it important to initially remove the victim of Human Trafficking, from the situation. Dallas voluntarily accompanied detectives, and she went to a family members' residence.

Prior to leaving the room detectives observed a syringe with heroin, which was tagged into evidence. Dallas also gave me a black Samsung cellular phone, and stated that the male who was trafficking her, provided it. She stated that he was listed in the phone as "Daddy".

2

June 11, 2015

I made contact with Dallas, and performed a recorded interview with her. She stated that she believes the male trafficking her is "Shane", and she also identified Shane via a photo which she had found on Reverbnation.com under the profile "Uncookd".

During the interview Dallas made the following statements:

Dallas has been a prostitute for approximately 2 years and is a heroin addict. She met "Shane" approximately 1 ½ months prior to today's date, a weekend before the Gathering of the Nations in Albuquerque. "Shane" contacted her in reference to her backpage.com ad, and took her to eat. "Shane" stated to her that he wanted to help her reach her full potential, and he would post the ad's and protect her. She told "Shane" that she needed to think about it, and he told her he would pick her up the next morning. The next morning she was at the Motel 6 located on University and I-25. "Shane" arrived, and Dallas was with a male friend. "Shane" attempted to pay her male friend (in order to take her). The friend refused, and Dallas went with "Shane" in a Silver Lincoln Town Car, which had tinted windows and rims. "Shane" took Dallas to the dollar store where he bought her food, and minutes for a phone. Shortly after he asked Dallas how much money she had, and she told him she had $32. "Shane" then took the $32. "Shane" then took her to the Roadway located on Menaul, where he made her take photos for her ad's. Prior to leaving, "Shane" took her I.D. Card and her cell phone, he provided her with the new cell phone, and he informed her that she could not leave the room. He also stated that all the money she made from prostitution was his. While he was stating this information to Dallas, he was sitting down, and had a handgun on his lap. Dallas stated that the gun along with his tone of voice, made her scared (in reference to giving him the money by force). "Shane" determined the rates, $80 for 15 minutes, $100 for a half hour, and $150 for an hour. Dallas told me that the John's would call a different female who would answer the phones (Diamond), and that Diamond would then tell "Shane". "Shane" would in turn call or text the phone he provided to Dallas to inform her of the date. She was instructed to text "Shane" when the John's arrived "Got him Daddy". When the date was finished she had to text "Everything went OK" (referring to she was paid the proper amount, not about her safety).

Dallas worked for "Shane" for approximately 1 ½ months and had approximately 4-5 dates per day, and made approximately $400-$500 a day, of which all money was paid to "Shane". During that time she only had 3 or 4 days off, which had to be approved by "Shane" because having days off was a "privilege". She told me that if she was in "trouble" she would not get a day off. Dallas told me that "Shane" also uses Wells Fargo to do his banking.

During the time that she was working for "Shane" he beat her 6 or 7 times. The 1st time he hit her was because she was not packed in the morning when she was supposed to be picked up by "Shane" to change hotels, and she had fallen asleep. He began to hit her, and took her laptop computer. He later came back and took her for food (a common tactic used to manipulate and control human trafficking victims).

3

The second time occurred when he found messages about Dallas leaving him. He drove her to the mesa at Los Volcanes and I-25, by the Tempurpedic building, and parked in the desert. Once parked he again physically hit her as punishment for the messages.

Another instance, she stated she was at the La Quinta on Coors and I-25. "Shane" had seen that she had added a friend on Facebook, and he also located a phone. He began to hit her, and told her that she had better not get the attention of the neighbors during the beating.

Another time she had directed a friend to her hotel room, the friend encountered "Shane" and asked him which room Dallas was in. She was physically hit as punishment.

While Dallas was at the Guesthouse, the phone in the room rang, and "Shane" was present in the room. "Shane" threatened to hit her with the phone, and took the phone from the room.

"Shane" became aware that Dallas had called a client from her room phone, and he hit her for "fucking with his money". He told Dallas that he would send her to Texas to see the other side of pimping.

Dallas told me that "Shane" had told her that he would kill her during the time that she had spent with him.

"Shane" also threatened to harm Dallas' family if she ever left, after he found her laptop computer.

"Shane" told Dallas that if she was in "trouble" he would send "fetishes" (anal) her way, and that she could not say no to the sexual act because he said so.

Dallas stated that there were three other females that she is aware of, Diamond (answers the phones), Strawberry, and Monica. She told me that she had only ever met Monica, and she was a half black half Hispanic female, who was at one time a dancer at TD's North.

Dallas also gave me another phone which she told me "Shane" had given her, she also again gave me verbal consent to search both phones, and collect all data therein.


June 12, 2015

Upon looking at the reverbnation.com website, "Uncookd" is listed as a 24 year old. I looked through the booking sheets for all males named "Shane" from 24 to 26 years old. I located a Shane Roach, further investigation through police databases lead to a positive identification of Shane as "Uncookd". Shane Roach also has a silver Lincoln Town Car registered to him, and he lives at 10156 Menaul NE #R6.

Based on the information that there are possibly 3 other females who are being trafficked, an exigent order for the location of the phone which I contacted on May 27, 2015, (505)730-3069, was conducted.

4

Upon looking in one of the phones provided by Dallas, with her consent, there were text messages to "Daddy" which were consistent with her statement. The phone number associated with "Daddy" is (505)288-5647. An exigent order was also conducted in an effort to locate any other victims.

Both phones were in the area of Menaul and Eubank, which is consistent with the area in which Shane Roach resides.

I went to the Mission Hills Apartments (10156 Menaul NE), and located a silver Lincoln Town Car parked in front of building "R". The vehicle was consistent with the vehicle which Dallas described. The vehicle I observed was bearing NM # 226SMY, and is registered to Shane Roach.

It is apparent that Shane was utilizing coercion, threats, and physical violence to force Dallas to perform prostitution. Based on the interview with Dallas, she was in constant fear for her safety/life based upon those threats.

Detective Fox was preforming surveillance on the 2000 silver Lincoln registered to Shane Roach. Detective Fox positively identified a male driver who entered the vehicle as Shane Roach, and an unknown female entered the passengers' seat. A traffic stop was conducted on the vehicle by uniformed officers and the female occupant was identified as Angela Santillanes.

An order was signed to electronically track Shane's 2000 Lincoln Town Car by the Honorable Charles Brown, District Court Judge.

June 13, 2015

Detectives arrived at 10156 Menaul NE where Shane resides and the vehicle has been seen parked in front of building "R". Detectives were unable to locate the vehicle in the area.

June, 15 2015
Detectives arrived in the area of 10156 Menaul NE, in an attempt to locate the 2000 Lincoln Town Car. Detectives were again unable to locate the vehicle in the parking lot.

June 15, 2015

The Pen register order, for both (505)730-3069, the number which I initially called for an undercover operation with Dallas, and (505)288-5647, the phone number for "Daddy", Shane Roach were signed by the Honorable Brett Loveless, District Court Judge.

June 16, 2015

I received a response from backpage.com, in reference to the search warrant which was signed on June 12, 2015. The file was recorded to disc and tagged into evidence.

5

In the attached file the email address msbossangie77068@gmail.com was used to post the advertisements. The advertisements ranged from October 2014 to June 2015, and included multiple females. The locations were in the Pheonix, AZ area, Houston, TX area, and Albuquerque, NM. There were several females listed, Monica, Diamond, and Lexus (Dallas). The information provided from backpage.com corroborated Dallas' statement.

June 23, 2015

The vehicle was located at Shane Roach's apartment, and the tracker was installed at 9:15AM

The PEN Register showed that (224)789-0201 called/texted the (505)730-3069 39 times on 6/23/15, upon running the (224)789-0201 through Rescue Forensics, it revealed a female "Trinity Star" with a current ad on backpage.com.

(505)730-3069 had contact with (505)288-5647 11 times on the same date.

June 24, 2015

The vehicle traveled to Colorado, and stayed at the Travel Lodge in Aurora, CO located at 14200 E 6th Ave.

June 25, 2015

The vehicle traveled to the Motel 8/ Travel Lodge located on University and Meanul.

June 27, 2015

I obtained the guest list from the Motel 8/ Travel Lodge.

June 28, 2015

The vehicle traveled to the Suburban Hotel, located at 2401 Wellesly NE.

June 29, 2015

I contacted "Trinity Star" at (224)789-0201, to arrange an undercover operation in reference to the advertisement on backpage.com. The URL to the backpage.com ad is:
http://albuquerque.backpage.com/FemaleEscorts/come-pay-a-visit-to-this-sexxxy-little-vixen-best-in-the-sw/6615826

After speaking to the female on the phone she informed me that she charged $200.00 for 1 hour. I agreed and she told me she was at the Suburban Hotel located at 2401 Wellesly NE. We arranged to meet at 1230, and upon arriving in the area I contacted the (224)789-0201 and was told room 280. When the female opened the door, I immediately identified her as "Monica" from previous postings which were found through the search warrant on backpage.com. I placed

6

$200.00 on the dresser (which is commonly done by John's purchasing sex). She immediately took her clothes off and was only wearing her bra and panties. She began to give me a back massage, and I asked her if she would put her finger on my "ass" while we "fucked" (referring to sexual intercourse). She stated she would if she had "sex gloves". I asked her then if she would put her finger under my "balls" while we "fucked" (referring to sexual intercourse). She agreed, and the arrest signal was given. The arrest team entered the room, and she was identified as Vanessa Nicol. Vanessa informed me that she had recently come to New Mexico from Texas (which did coincide with the advertisements I was able to see on Rescue Forensics). She stated that she had stayed at the Travel lodge the week prior (which is consistent to the data seen on the tracker installed on Shane Roach's vehicle). Vanessa stated that her sister lives in Albuquerque, and that her sister's name was Angela Santillanes. This was consistent with the woman who was in Shane's vehicle. Vanessa further stated that she worked at TD's (consistent with the information provided by Dallas). Vanessa refused to cooperate any further, stating that she does not "work" for anyone.

The phone which was located in Vanessa's room was placed on airplane mode, and taken pending a search warrant for the contents of the phone. Also located in the room was a ledger of prostitution encounters which has been tagged into evidence.

Vanessa was then booked into MDC without incident.

At 15:23 Shane Roach drove past the Suburban Extended Stay. Detective Anderson positively identified Shane as the driver of the vehicle, and Shane returned to the Suburban, parking directly below Vanessa's room. Shane was seen entering the vehicle a short time later, and drove away from the hotel. This behavior indicated that Shane was checking on Vanessa.

At approximately 1600 I received a call from (224) 789-0201, which was the same number I contacted to set up the "date". The female stated that she was looking for her "sister" "Trinity". She then asked if I was at her room, which I told her I was. She asked if "Trinity" was there in the room when I left, and I told her she was. Immediately after the phone call, Detective Anderson informed me that Shane and Angela arrived back at the Suburban. Throughout my investigation, Dallas informed me that a female would take the calls for the "dates" and direct the John's to her room. This was also consistent with the phone call I received after the arrest of Vanessa. The phone that Vanessa had on her persons was seized pending a search warrant. This indicated that the "sister", who Vanessa identified as Angela, was in possession of the phone which called me at 1600, taking calls for prostitution at the time I contacted Vanessa for the date. Based on my investigation, I have probable cause to believe that Angela is the female working for Shane, who arranges, and manages "dates"

Immediately after the initial time Shane drove to the Suburban, he returned to 10156 Menaul NE apartment R6, retrieved Angela and drove back to the Suburban.

The information given by Dallas Grassbaugh was verified throughout the investigation, and I respectfully request a warrant be issued for the arrest of Shane Roach for Human Trafficking, Kidnapping, and Aggravated Assault with a Deadly Weapon.

7

After the arrest warrants for Angela and Shane were signed by the Honorable H. Alaniz, Metro Court Judge, I contacted Angela via telephone at (224)789-0201. I informed Angela that her "sister" had called me asking for a ride from Walmart. She inquired which number she called from. I gave her Detective Anderson's phone number, and she immediately called Detective Anderson. Detective Anderson told the Angela that a female had asked to borrow the phone at the Walmart. Immediately after this conversation Shane and Angela exited their apartment, and entered the vehicle. Uniformed Officers conducted a traffic stop on the vehicle and both Shane and Angela were taken into custody and transported to the Foothills Substation. Detective Anderson observed a handgun on the passenger seat floorboard, and two cell phones. I requested that he enter the vehicle and place the cell phones on airplane mode to prevent any destruction of evidence (as phones can be remotely accessed and the data erased). Detective Anderson informed me that he placed the cell phones on airplane mode and placed them back in the same area they were located. Detective Anderson had the vehicle sealed by a field investigator and towed pending a search warrant.

I arrived at the Foothills Substation, and after reading Angela her rights per Miranda, she refused to answer my questions. I read Shane his rights per Miranda, which he stated he understood and agreed to answer my questions. Shane stated that he banks at Wells Fargo (consistent with the information provided by Dallas). He refused any knowledge of backpage.com, or prostitution throughout my interview. The interview was concluded and the tapes will be tagged into evidence.

Detective Anderson along with the Narcotics Unit, executed a search warrant at 10156 Menaul NE apartment R6. Inside there were several phones and laptops located. An external hard drive was located inside of a sock in the closet. There was a Remington 12 gauge shotgun, and a Jimenez Arms .22 caliber handgun also inside of the apartment. There was also an amount of black substance consistent with heroin located along with a scale. There were no items located in the apartment which indicated heroin use (foil, spoons, or hypodermic needles). There was a large amount of credit card pre loaded gift cards inside of the apartment and several computer. The items have been tagged into evidence, and the electronic items have been submitted for processing.

June 30, 2015

I obtained search warrants for the following items: The 2000 silver Lincoln Town Car, any Wells Fargo Accounts associated with Shane Roach, Backpage.com in connection with Vanessa's advertisement, and Google.

At 1359 the search warrant was served on the vehicle which was towed and stored inside at Randy's Towing. The vehicle was photographed prior to the search, and no seals appeared to have been disturbed. Inside the vehicle I collected two cell phones (1 located on each front seat) and a Ruger 9mm handgun which had 11 rounds of 9mm ammunition in the magazine with an empty chamber. Inside the drivers' side door compartment I located 4 taped brown bags. Inside of each brown bag were several condoms (these items were photographed. I also observed that in the vehicle were Vanessa's belongings which I had previously seen, while inside of Vanessa's

hotel room. A copy of the search warrant was left with the vehicle, the phones were taken for processing and the handgun was tagged into evidence.

### INTERSTATE NEXUS

The website Backpage is a national website with regionalized postings throughout the U.S. ROACH used Backpage as a means to promote the trafficking of his victim.

Additionally, the posting and maintenance of advertisements on Backpage are conducted using electronic devices, including but not limited to computers, tablets and digital cameras.

### IV. SEARCH AND SEIZURE

Your Affiant knows based upon training, experience, and information relayed by law enforcement officers and others involved in the forensic examination of computers that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips as described in Attachment B. Searches and seizures of computers and computer-related media requires agents to seize all computers and computer-related media described in Attachment B to be processed by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

A. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

B. Searching computer systems requires the use of precise scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

C. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises.

D.  Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

In order to search for data that is capable of being read or interpreted by a computer and computer-related media described in Attachment B, law enforcement personnel will need to search, seize, image, copy, and examine the following items believed to be evidence and/or an instrumentality of a violation of 18 U.S.C. 1591, subject to the procedures set forth above:

A.  All computer equipment and storage device which are capable of being used to commit or further the crimes outlined above, or create, access or store the types of evidence, fruits, or instrumentalities of such crimes as outlined in Attachment B;

B.  All computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners which are capable of being used to commit or further the crimes outlined above, or create, access or store the types of evidence, fruits, or instrumentalities of such crimes as outlined in Attachment B;

C.  All magnetic, electronic or optical storage devices capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic notebooks, cellular telephones, digital cameras, video cameras (both digital and analog), thumb drives, memory sticks, USB flash drives, key drives, USB devices, media cards (including xD-Picture cards, Multi Media cards, Compact Flash cards, Memory Sticks, Secure Digital Cards, Solid State drives), IPods, IPads, tablets, PSP players, gaming systems, printers, scanners, video game systems, Blu-ray discs, minidiscs, removable/portable hard drives, magnetic tapes, Video Home System tapes (VHS), ZIP drives and personal digital assistants capable of being used to commit or further the crimes outlined above, or create, access or store the types of evidence, fruits, or instrumentalities of such crimes as outlined in Attachment B;

D.  All documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software.

10

E.  All applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

F.  All internet service provider records;

G.  All physical keys, encryption devices, dongles, and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

H.  All passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

I.  Writing tablets, journals, correspondence and other written content evidence that may identify individual involvement.

Based on the information set forth above, there is probable cause to believe that computer(s) and computer related media described in Attachment B, which are located on the apartment and premises described in Attachment A, are instrumentalities and evidence of ~~the~~ sex ~~sexual exploitation of minors,~~ trafficking in violation Title 18 U.S.C. 1591, and should be seized as such. Furthermore, based upon the foregoing paragraphs, judicial authority is specifically requested to search for and seize computer equipment, storage devices, video equipment, and other evidence outlined in Attachment B, and complete the search/examination of the seized computers and computer related media at an appropriate law enforcement facility.

## V. CONCLUSION

Based upon the information contained herein, your Affiant states that probable cause exists to believe that instrumentalities, fruits, and/or evidence of violations of Title 18, United States Code, Section 1591 are located on the following electronic devices: one Apple Macbook serial number 4511718DF5X, one HP Pavillion Laptop computer serial number 5CD3347KHB, one Toshiba Hard Drive serial number 13Q7SI3ASSX3, one Samsung Tablet number CE0168 and one Kodak Digital Camera serial number KCGMJ02726649 seized from the residential property and premises located at 10156 Menaul Blvd. NE, Apartment R6, Albuquerque, NM 87112, as described in Attachment A to include curtilage, outbuildings, vehicles, trash containers, lock boxes, safes and persons present on the premises.

WHEREFORE, I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law enforcement officers, to enter the said premises, and search for, seize, and examine the items set forth above and in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. FURTHER AFFIANT SAYETH NOT.

11

*[signature]*
Special Agent Morgan Langer
Department of Homeland Security
Homeland Security Investigations

Subscribed and sworn before me this  16th  day of  July , 2015

*[signature]*
United States Magistrate Judge

12

# ATTACHMENT A

DESCRIPTION OF PROPERTY TO BE SEARCHED

      The property to be searched is described as one Apple Macbook serial number 4511718DF5X, one HP Pavillion Laptop computer serial number 5CD3347KHB, one Toshiba Hard Drive serial number 13Q7SI3ASSX3, one Samsung Tablet number CE0168 and one Kodak Digital Camera serial number KCGMJ02726649 seized from the residential property and premises located at 10156 Menaul Blvd. NE, Apartment R6, Albuquerque, NM 87112

## ATTACHMENT B

### ITEMS TO BE SEARCHED FOR AND SEIZED

1. All electronic data processing and storage devices, computers and computer systems including central processing units; internal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, cellular telephones, PDAs, IPods, IPads, Tablets, gaming systems or other memory storage devices; peripheral input/output devices such as keyboards, printers, video display monitors, optical readers and related communication devices such as modems; together with system documentation, operating logs and documentation, software and instruction manuals, handwritten notes, logs, user names and lists.

2. All of the records below, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, electronic address books, calculators or any other storage media, together with indicia of use, ownership, possession or control of such records.

3. Any photographs, digital images, videos, computerized graphic files, printed material, computer images or files made by electronic or mechanical means which are located on the premises which show a person who is a victim of sex trafficking or the instrumentalities of that offense.